**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DENISE HUDSON** | * | |
| | * | |
| **v.** | * | **Civil Case No. JFM-14-3683** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Denise Hudson, who is appearing *pro se,* did not file a motion for summary judgment, but she did file supporting documentation in response to the Commissioner's Motion for Summary Judgment. I have considered that documentation and the Commissioner's pending Motion for Summary Judgment. [ECF Nos. 16, 20]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that the Commissioner's motion be denied, the decision of the Commissioner be reversed in part, and the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Hudson protectively filed her applications for benefits on January 5, 2011, alleging a disability onset date of December 1, 2000.[1] (Tr. 126-35). Her applications were denied initially

---

[1] The record indicates that Ms. Hudson had previously applied for and been denied disability benefits during the time after that alleged onset date, so the relevant dates for the current application do not extend all the way back to 2000. Also, while Ms. Hudson filed applications for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), it appears that only her SSI application was

and on reconsideration. (Tr. 67-70, 72-74). After a continuance to allow Ms. Hudson to obtain representation, a hearing was held in her case on July 3, 2013. (Tr. 28-55). After the hearing, the Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 13-23). The Appeals Council ("AC") denied review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-5).

The ALJ found that, during the relevant time frame, Ms. Hudson suffered from the severe impairments of bipolar disorder, bronchitis, and hepatitis C. (Tr. 18). Despite these impairments, the ALJ determined that Ms. Hudson retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she can perform work that does not require more than occasional crawling; nor more than frequent climbing, balancing, crouching, kneeling, and stooping; nor more than a concentrated exposure to extreme temperatures, vibration and hazards and is limited to work that is simple as defined in the Dictionary of Occupational Titles as Specific Vocational Preparation levels 1 and 2, Routine and Repetitive tasks in a work environment involving only simple-work related decisions; with few, if any, work place changes; and no more than occasional interaction with co-workers and supervisors.

(Tr. 20). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Hudson could perform, and that she was not, therefore, disabled. (Tr. 22-23).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described

---

adjudicated, likely because her work history did not qualify her for DIB.

below, while substantial evidence supports some portions of the ALJ's decision, the analysis is deficient under the recent Fourth Circuit opinion in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Accordingly, I recommend remand.

At step one, the ALJ found in Ms. Hudson's favor that she had not engaged in substantial gainful activity since her application date. (Tr. 18). At step two, the ALJ found the severe impairments listed above. (Tr. 15). The ALJ also assessed Ms. Hudson's hypertension, but found it to be non-severe. (Tr. 18).

At step three, the ALJ specifically considered listings 5.05 (chronic liver disease) and 12.04 (affective disorders), but noted that Ms. Hudson did not establish that either listing had been met or equaled. (Tr. 18-19). Notably, in considering listing 12.04, the ALJ applied the special technique for evaluation of mental impairments, and determined that Ms. Hudson had moderate difficulties in concentration, persistence, or pace. (Tr. 19).

In considering the appropriate RFC assessment, the ALJ provided a summary of Ms. Hudson's testimony. (Tr. 20). The ALJ also analyzed the medical evidence derived from treatment notes and consultative examinations and noted a poor and sporadic work history. (Tr. 21). The ALJ also assigned weight to several medical sources, including three State agency medical consultants and two consultative examiners. (Tr. 21-22).

Continuing at step four, the ALJ found that Ms. Hudson had no past relevant work. (Tr. 22). At step five, the ALJ posed hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 50-52). Ultimately, the ALJ determined that Ms. Hudson's RFC matched one of the hypotheticals he had posed. (Tr. 20). The VE cited several jobs, including bagger, mail clerk, and office helper, in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 23, 50).

The function of this Court is not to review Ms. Hudson's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g). I am unable to recommend that finding here.

While this case was pending, the Fourth Circuit issued its opinion in *Mascio*, a Social Security appeal in the Eastern District of North Carolina. In *Mascio*, the Fourth Circuit determined that remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d 632, 638 (4th Cir. 2015).

At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Most listings therein consist of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area,

based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.*; § 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas, along with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform

5

simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*  In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ's analysis consisted, in its entirety, of the following: "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties.  She testified that she has trouble with concentration.  She states in her function report that she is unable to focus.  However, she was able to follow simple instructions independently during her consultative examination."  (Tr. 19) (internal citations omitted).  In the RFC analysis, the ALJ says little about concentration, persistence, or pace outside the assertion that, "There have been consistent findings of . . . good attention/concentration."  (Tr. 21).  That characterization of the record is not accurate, as there are several indications in the more recent medical records of difficulties in the area of concentration.  *See, e.g.*, (Tr. 372) (treatment note from 4/13/13 indicating "easily distracted"); (Tr. 373) (treatment note from 6/18/13 noting "short patience/bored quickly"); (Tr. 383) (noting that attention/concentration are "moderately impaired"); (Tr. 388) (indicating "poor" concentration).  Moreover, the only item specifically cited by the ALJ to contradict the notion of limitation in the area of concentration, persistence, or pace, the consultative examination report, simply notes, "She was able to follow simple instructions independently," without providing any information about the nature of those simple instructions or the level of persistence or pace the instructions required.  (Tr. 343).  Accordingly, the ALJ's assessment was not supported by substantial evidence and does not suffice, under

*Mascio*, to explain the lack of any RFC limitation in the area of concentration, persistence, or pace. Remand is therefore appropriate.

Additionally, a second potential *Mascio* error lies in the AC's failure to address the medical opinion from Ms. Hudson's treating physician, Dr. Bogrov. *See Mascio*, 780 F.3d at 637 (finding remand necessary when the ALJ did not explain the weight he assigned a medical opinion because it left the court to guess about how the ALJ arrived at his conclusions on the claimant's ability to perform relevant functions). The AC is not generally required to provide an explanation for its denial of review. *See Meyer v. Astrue*, 662 F. 3d 700, 705 (4th Cir. 2011). However, this case provides the unusual situation where Ms. Hudson provided an opinion from a treating physician that was relevant to the time frame pre-dating the ALJ's opinion, and also submitted an explanation for the failure to submit that opinion to the ALJ (namely, Dr. Bogrov's policy not to complete a form until treating a patient for at least three months). (Tr. 217, 398-406). If the AC had credited Dr. Bogrov's opinion, it might have changed the outcome of the proceeding, since Dr. Bogrov described Ms. Hudson as "extremely impaired" in several potentially relevant functional categories. *Id.* In her motion, the Commissioner makes arguments that might support an assignment of reduced weight to Dr. Bogrov's opinion, but, absent any analysis, this Court cannot speculate as to how the AC reached its conclusion. Therefore, on remand, the ALJ should consider and render an assignment of weight to Dr. Bogrov's opinion, as appropriate. In recommending remand, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Hudson is not entitled to benefits is correct or incorrect.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 16]; REVERSE IN PART the decision of

the Commissioner; REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendation; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  August 19, 2015                                        _____/s/_____

                                                               Stephanie A. Gallagher
                                                               United States Magistrate Judge